```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   11/03/2023  
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
––––––––––––––––––––––––––––––––––––––––
A.M., an infant by her Parent and Natural Guardian, MARC MANARA, and MARC MANARA, Individually,

                        Plaintiffs,

  -against-

J.S., an infant by his Parent and Natural Guardian, CAROLYN SERGEANT, CLARKSTOWN CENTRAL SCHOOL DISTRICT, JEFFREY SOBEL, HARRY LEONARDATOS, ANGIE WATT, and JOSEPH L. TRONGONE,

                        Defendants.
––––––––––––––––––––––––––––––––––––––––

No. 22-CV-03421 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Marc Manara on behalf of himself and as representative of his minor daughter, A.M. (together, "Plaintiffs"), bring this Action under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.*, the First and Fourteenth Amendments of the United States Constitution, U.S. Const. amend. I, XIV, the Dignity for All Students Act ("DASA"), New York Education Law 10 *et. seq.*, and intentional infliction of emotional distress ("IIED") pursuant to New York state law against Clarkstown Central School District (the "District"), Jeffrey Sobel ("Sobel") in his individual and representative capacity as the District's Interim Superintendent of Schools, Harry Leonardatos ("Leonardatos") in his individual and representative capacity as the Principal of Clarkstown High School North ("CHSN"), a high school within the District, Angie Watt ("Watt") in her individual and representative capacity as Assistant Principal at CHSN, and Joseph L. Trongone ("Trongone") in his individual and representative capacity as Mathematics teacher and Head Football Coach at CHSN, (collectively, with the District, the "District

1

Defendants"). [1] (*See generally* Complaint (the "Compl."), ECF No. 7.) Plaintiffs allege that Defendants violated their rights when they "failed to take reasonable steps to address or prevent his continued harassment and intimidation of A.M." by a fellow CSHN student, Defendant J.S., who had previously sexually assaulted A.M. multiple times off-campus. (Compl. ¶ 3.) Before the Court is the District Defendants' partial Motion to Dismiss (the "Motion"). (*See* Notice of Motion, ECF No. 23.)

For the following reasons, the Motion is granted.

## BACKGROUND

The following facts are drawn from the Plaintiffs' Complaint (ECF No. 7) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff A.M. is a student at the District's Clarkstown High School North. (Compl. ¶ 1.). Plaintiff Marc Manara ("Mr. Manara") is A.M.'s father. (Compl., ¶¶ 1,13.) Defendant J.S. was A.M.'s male friend, a fellow high school student, and a member of the school's varsity football team. (Compl. ¶¶ 2, 14, 21, 29.) When A.M. and J.S. were alone in their homes or in public, J.S. would grope A.M. and grab parts of her body despite A.M. expressing she did not like it or consent to it. (Compl. ¶ 21.) In June 2021, J.S. sexually assaulted A.M. off school grounds at two private residences. (Compl. ¶¶ 2, 14, 21-26.) J.S. targeted A.M. because she publicly identified as a lesbian and he wanted to "turn" her into a heterosexual. (Compl. ¶ 2.)

On July 15, 2021, Mr. Manara reported to school counselor Keri Nitto that there had been a "serious incident" between J.S. and A.M. and requested they not be placed in any classes together for the following school year. (Compl. ¶ 27.) On August 16, 2021, Nitto offered to inform

---

[1] Plaintiffs additionally bring Counts (VI) assault; (VII) battery; and (VIII) false imprisonment against non-appearing co-defendant J.S., but those are not a part of this motion, nor is J.S. a part of the District Defendants.

administration of what occurred if Mr. Manara thought it necessary and confirmed that A.M. and J.S. would not be in any classes together for the upcoming school year. (Compl. ¶ 29.) Mr. Manara replied that A.M. had severe anxiety and fear that J.S. would make a scene in the hallway or start a gossip or smear campaign against her. (Compl. ¶ 29.) Mr. Manara also expressed frustration about J.S.'s continued participation on the school football team because the incident did not occur during school or on school grounds. (Compl. ¶ 29.) On August 9, 2021, Mr. Manara advised Trongone what had occurred and Trongone responded that there was "nothing he could do about it" and "to notify the school." (Compl. ¶ 28.)

Also on August 16, 2021, Mr. Manara spoke with Leonardatos, who recommended that the family file a police report, which would allow for an order of protection that would require J.S. to stay away from A.M. while on school grounds. (Compl. ¶ 30.) The District also offered A.M. counseling services. (Compl. ¶ 39.) On August 24, 2021, Mr. Manara advised Leonardatos and Nitto that a report was filed with the Town of Clarkstown Police Department and that the procedure to obtain an order of protection was being looked at due to J.S.'s age. (Compl. ¶ 31.) Three days later, Mr. Manara advised that A.M. had signed depositions for J.S.'s criminal prosecution and a court date was set for September 8, 2021 for the issuance of an order of protection. (Compl. ¶ 32.) Mr. Manara also advised on August 27, 2021 that the assigned detective had contacted the school resource officers at CHSN. (Compl. ¶ 32.)

On September 20, 2021, J.S. walked directly at A.M. in the school annex's main hallway and stared at her, which caused her to have an anxiety attack. (Compl. ¶ 33.) Mr. Manara informed Leonardatos and Nitto of the hallway incident, that J.S. had told another student, "A", to "finish the job," implied to be rape of A.M., and reiterated his disappointment that J.S. continued to play

for the varsity football team. (Compl. ¶ 36.) On September 21, 2021, A.M. filed a petition under Article 3 Family Court Act. (Compl. ¶ 34.).

On the same day, Mr. Manara went to CHSN's varsity football practice and spoke "calmly" with an assistant coach, Thomas Lynch ("Lynch") stating that a player was encouraging other individuals to rape A.M. (Compl. ¶ 37.) After identifying who he was and the Defendant, J.S., as the player at issue, Coach Lynch instructed Mr. Manara to leave, which he did without incident. (Compl. ¶ 37.) Shortly thereafter two Clarkstown Police Department patrol cars arrived at Plaintiffs' home to warn Mr. Manara "in a friendly manner" that the school had reported an "incident" and suggest that he not return to the campus. (Compl. ¶ 37.) The next day, a telephone conversation was held between Mr. Manara and Leonardatos and Watt wherein Mr. Manara was informed that Coach Lynch had alleged that Mr. Manara threatened J.S. Mr. Manara denied this, but Leonardatos and Watt told Mr. Manara that he was restricted from school property or attending any school sponsored event without prior consent. (Compl. ¶ 38.) On October 15, 2021, Sobel emailed Mr. Manara reminding him that he was not permitted to attend CHSN's upcoming football game. (Compl. ¶ 55.) Based on this advisement and his concerns regarding "worsening what was already a toxic environment for his family", Mr. Manara did not attend a further two CHSN football games, on November 4 and November 11, 2021. (Compl. ¶¶ 54-55.)

On September 21, 2021, Mr. Manara sent Leonardatos and Watt a letter lamenting "the lack of attention from the school in addressing J.S." (Compl. ¶ 39.) In particular, Mr. Manara complained that J.S. was permitted to attend the same school as A.M. and participate in the football program in violation of "a multitude of policies, procedures, protocols, and codes of conduct." (Compl. ¶ 39.) In his letter, Mr. Manara cited to a portion of the District's Code of Conduct, which prohibited "misconduct that endangers the health and safety of students or staff within the school

4

or substantially disrupts the educational process" as being violated by J.S. (Compl. ¶ 40.) Mr. Manara "questioned whether CCSD's failure to enforce these policies was due to a discriminatory policy against issues of sexuality and gender," referencing an incident the prior year where a physical education and health teacher would not include gender issues in his health class curriculum" because the teacher thought it was a "ridiculous" subject. (Compl. ¶ 41.) Mr. Manara concluded by demanding that J.S. be transferred to Clarkstown High School South ("CHSS"), a different high school in the District, or alternatively, that he be expelled from the football program and placed on in-school suspension for A.M.'s safety and protection. (Compl. ¶ 42.) Sobel responded the next day, stating that the school's legal counsel "indicated" that they could not "grant" his request that J.S. be removed from CHSN or, suspended from participating in extracurricular activities. (Compl. ¶ 44.)

On September 22, 2021, A.M. was pulled out of her first period class by the Watt, who asked A.M. questions about the sexual assaults before sending her back to class. (Compl. ¶ 38.) The next day, A.M. was pulled out of her first period class again by CHSN's social worker, who asked A.M. questions regarding the sexual assaults and who the perpetrator was so she could speak to him. (Compl. ¶ 43.)

On September 23, 2021, the Family Court issued a temporary order of protection that required J.S. to stay at least 50 feet away from A.M. (Compl. ¶ 45.) Mr. Manara provided the District with the temporary order of protection on September 28, 2021. (Compl. ¶¶ 45, 47.) On September 30, 2021, Mr. Manara emailed Watt, Sobel and Leonardatos advising that A.M. and her family intended on attending CHSN's football game the following evening and that the distance between the bleachers and football field sideline were less than the fifty-foot threshold set forth in the Order of Protection. Sobel replied that it was J.S.'s obligation to comply and that

"[the District] should reasonably provide for the student to be able to comply. We have done so by working with the students' schedules and pathways around the school." (Compl. ¶ 48.)

Between October 4 and 8, 2021, J.S. passed A.M. four times in the school hallway. (Compl. ¶ 52.) On October 10, 2021, A.M.'s mother emailed Sobel to request that the matter be addressed. (Compl. ¶ 52.) Sobel requested specifics about the times, dates, and locations so the District could follow up. (Compl. ¶ 52.) Mr. Manara provided the requested information. (Compl. ¶ 52.) The following morning, on October 12, 2021, A.M. was pulled out of her second period class by Watt and informed that nothing could be done about her seeing J.S. in school, and surveillance footage was being pulled to verify her seeing J.S. as she claimed. (Compl. ¶ 53.) On December 23, 2021, A.M. was pulled out of her eighth period class by Watt and brought to her office, where Watt informed A.M. that she would have to change her walking path to avoid J.S. (Compl. ¶ 59.) A.M. did not reply and walked out without speaking. (Compl. ¶ 59.)

On November 18, 2021, Mr. Manara advised Sobel that an admission of guilt had been entered with a disposition date of January 13, 2022. (Compl. ¶ 57.) On January 13, 2022, a dispositional hearing was held at which J.S. pled guilty and a permanent order of protection was issued that required J.S. to stay at least 500 feet from A.M. and "[r]efrain from harassing, intimidating, threatening, and otherwise interfering with" her until July 1, 2023. (Compl. ¶¶ 14, 61- 62.) On January 17, 2022, Mr. Manara provided Sobel, Leonardatos, and Watt with a copy of the 500-foot order of protection. (Compl. ¶ 63.)

The next day, Mr. Manara reported J.S. to the Clarkstown Police Department for violating the order of protection since it would not be physically possible for him to be in the same building as A.M. Watt then sent A.M. home early while the school processed J.S.'s transfer. (Compl. ¶ 64). J.S. was subsequently removed from CHSN and transferred to CHSS. (Compl. ¶ 64).

**PROCEDURAL HISTORY**

On April 27, 2022, Plaintiffs commenced this action against District Defendants. (ECF No. 1.) On November 7, 2022, the District Defendants filed a motion for partial dismissal of the Complaint. (ECF No. 23.) Plaintiff opposed the motion. (ECF No. 22.) District Defendants filed a reply memorandum in further support of their motion. (ECF No. 26.)

**LEGAL STANDARD**

I.   **Rule 12(b)(1)**

A claim is subject to dismissal under Rule 12(b)(1) if the Court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See Fed. R. Civ. P.* 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). Plaintiffs bear the burden of proving by a preponderance of the evidence that the ourt has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

II.  **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the

non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

Several of Plaintiffs' claims suffer from preliminary deficiencies. The Court turns to these deficiencies first.

    a. <u>Individual Liability under Title IX</u>

Plaintiffs' First and Second Causes of Action assert claims under Title IX against the District, as well as Sobel, Leonardatos, Watt, and Trongone. The Supreme Court, however, has made clear that "Title IX reaches institutions and programs that receive federal funds" but "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). "Numerous district courts in the Second Circuit…have held that there is no individual liability under Title IX." *Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases); *see also Sutton v. Stony Brook Univ.*, No. 21-2055, 2022 WL 4479509, at *2 (2d Cir. Sept. 27, 2022). Plaintiffs' Title IX claims against Sobel, Leonardatos, Watt, and Trongone fail on this basis alone.[2]

    b. <u>Private Right of Action under DASA</u>

---

[2] Moreover, Plaintiffs failed to address District Defendants' argument regarding the lack of individual liability under Title IX in their Memorandum of Law in Opposition to the Motion to the Dismiss ("Opp.", ECF No. 22). "Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers the defendant's arguments for dismissing such a claim." *Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *25 (S.D.N.Y. Sept. 28, 2023). Plaintiffs' "failure to provide argument on" this issue "provides an independent basis for" dismissing Plaintiffs' Title IX claims against Sobel, Leonardatos, Watt, and Trongone. *See McCormick v. Cnty. of Westchester*, No. 19-CV-2916 (KMK), 2023 WL 2632204, at *14 (S.D.N.Y. Mar. 24, 2023) (citation omitted).

Plaintiffs' Fifth Cause of Action alleges a violation of DASA. DASA prohibits discrimination, harassment, and bullying by public school employees and students on school property and at school functions. N.Y. Educ. Law §12. Courts in this Circuit, however, have consistently held that there is no private right to sue under DASA, *see Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *20 (W.D.N.Y. May 7, 2018); *Benacquista v. Spratt*, 217 F. Supp. 3d 588, 602 (N.D.N.Y. 2016), as "[t]here is no explicit private right of action in the statutory scheme nor can one be implied from the statutory language and the legislative history," *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 327 (E.D.N.Y. 2016) (quoting *Motta v. Edlred Cent. Sch. Dist.*, 141 A.D.3d 819, 820 (3rd Dept. 2016)). This Court similarly determines that there is no private right of action under DASA and dismisses Plaintiffs' Fifth Cause of Action on that basis.

    c. <u>Notice of Claim for IIED</u>

Plaintiffs bring their Ninth Cause of Action against the District Defendants for IIED under New York law. The District Defendants argue that Plaintiffs' IIED claim should be dismissed for failing to serve a timely notice of claim prior to asserting this claim against the District Defendants. (Def's Mot. at 18.)

Section 3813(1) of the New York Education Law provides that "[n]o action or proceeding, for any cause whatever, except as hereinafter provided ... shall be prosecuted or maintained against any ... board of cooperative educational services ... or any officer [thereof] ... unless it shall appear by and as an allegation in the complaint ... that a written verified claim ... was presented to the governing body of said district or school within three months after the accrual of such claim ...." N.Y. Educ. Law § 3813(1). In addition, New York Education Law § 3813(2), which applies to tort claims, "provides that any tort claim against [any party enumerated in § 3813(1) or its] employee

9

is subject to the notice of claim requirements set forth in New York General Municipal Law Sections 50-e and 50-i." *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 306 (E.D.N.Y. 2012); accord, N.Y. Educ. Law § 3813(2). New York General Municipal Law Sections 50-e and 50-i require a plaintiff asserting a tort claim to serve a notice of claim "within ninety days after the claim arises," N.Y. Gen. Mun. Law § 50-e(1)(a), and "plead [in the complaint] that it has been served," *Smith v. New York City Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (citing N.Y. Educ. Law § 3813[1] and N.Y. Gen Mun. Law § 50-e).

Notice of claim requirements are construed strictly by New York state courts and "[f]ailure to comply with [them] ordinarily requires dismissal." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). In addition, "[i]t is well settled that federal courts entertaining state law claims against municipalities are obligated to apply any applicable state law notice-of-claim provisions." *Jones v. City of New York*, No. 1:19-CV-10424 (MKV), 2021 WL 4482150, at *5 (S.D.N.Y. Sept. 30, 2021) (citation omitted).

Plaintiffs have plead no facts alleging that they have complied with New York's notice-of-claim provision, and do not even dispute the District Defendants' claim that they have not. (*See* Def.'s Reply Memorandum of Law, ECF No. 26.) The Court therefore grants District Defendants' motion to dismiss the IIED claim for failure to comply with New York's notice requirement. Because dismissal is required under New York's notice of claim provisions, the Court does not reach the merits of Plaintiffs' argument.

      d. <u>Punitive Damages against the District</u>

The District Defendants contend that Plaintiffs "impermissibly seek an award of punitive damages." (Def's Mot. at 22.) The Court agrees because "punitive damages are not available against a government entity like the…District." *T.P. ex rel. Patterson v. Elmsford Union Free Sch.*

*Dist.*, No. 11 CV 5133 VB, 2012 WL 860367, at *12 (S.D.N.Y. Feb. 27, 2012); *see also Pierce v. Sullivan W. Cent. Sch. Dist.*, 379 F.3d 56, 58 n.3 (2d Cir.2004). Plaintiffs cannot recover punitive damages against the District, and so are limited in seeking such damages against the individual defendants (including Sobel, Leonardatos, Watt, and Trongone). Plaintiffs' claim for punitive damages against the District is dismissed.

The Court now addresses the remaining claims challenged by District Defendants. Both claims are actions for violation of federal rights under Section 1983.

Section 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Fourteenth Amendment Claim

The Fourteenth Amendment "prohibits a state actor from depriving a person of life, liberty, or property without due process of law." *Dolcine v. Hanson*, No. 17-CV-4835 (VEC), 2021 WL

949748, at *5 (S.D.N.Y. Mar. 12, 2021). To state a claim under Section 1983 for the denial of procedural due process under the Fourteenth Amendment, a plaintiff must allege both the existence of a protected property or liberty interest, and that he or she was deprived of that interest without sufficient process. *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "The threshold issue for such an enquiry "is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir.1988).

Students generally have a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). This Court has previously recognized the property right granted to a public-school student under New York law as a sufficient interest for a procedural due process claim. *See Doe v. U.S. Sec'y of Transportation*, No. 17-CV-7868 (CS), 2018 WL 6411277, at *12 (S.D.N.Y. Dec. 4, 2018); *Gardner v. Wansart*, No. 05 CIV. 3351(SHS), 2006 WL 2742043, at *5 (S.D.N.Y. Sept. 26, 2006).

The "property interest which is protected by the Due Process Clause," however, "is the right to participate in the entire educational process." *Kajoshaj v. City of N.Y.*, No. 11-CV-4780, 2013 WL 249408, at *4 (E.D.N.Y. Jan. 23, 2013). Accordingly, "a student's procedural due process rights with respect to his or her education only arise where the student is excluded from the entire educational process." *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at *7 (S.D.N.Y. Mar. 19, 2019) (citation omitted); *see also Saggio v. Sprady,* 475 F.Supp.2d 203, 209–10 (E.D.N.Y. 2007) (finding plaintiff failed to demonstrate deprivation of a protected property interest where "the District did not exclude her from attending school…thus [it] cannot be said that the District infringed upon her right to an education.").

The Court finds that Plaintiffs have not plausibly alleged a procedural due process claim because they have not identified a protected interest of which A.M. was deprived by virtue of the

District Defendants' challenged conduct. Although A.M. has a "cognizable interest in a free and appropriate public education," *see Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 630 (E.D.N.Y. 2011), a student's procedural due process rights with respect to his or her education only arise where the student "is excluded from the *entire* educational process." *Martinetti*, 2019 WL 1255955, at *7 (emphasis added). Plaintiffs do not allege that A.M. was ever suspended, expelled, or otherwise excluded from the educational process. Instead, they allege that A.M. was "impaired" in "her ability to move around campus" (Compl. ¶ 4.) owing to the "anxiety" she suffered when running into J.S. multiple times on school grounds (Opp. at 27.) This anxiety may have had the effect of "negatively impacting her school day" (Opp. at 27), but "there is no property interest in any particular type of education program," including one free from anxiety – "just an interest in not being excluded from the entire educational process," *Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *9 (S.D.N.Y. Mar. 7, 2022), *vacated and remanded on other grounds sub nom. Farrell v. Hochul*, No. 22-517, 2023 WL 3014758 (2d Cir. Apr. 20, 2023) (cleaned up; citation omitted); s*ee also D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16CV4546SJFAYS, 2017 WL 3017189, at *8–9 (E.D.N.Y. July 11, 2017) (finding no deprivation of right to an education due to racially discriminatory behavior of school employees because such behavior never resulted in student being suspended, expelled, or otherwise excluded from the entire educational process). Because the Complaint lacks allegations that A.M. was ever "suspended, expelled, or otherwise excluded…in any manner," *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-CV-4564, 2017 WL 3017189, at *9 (E.D.N.Y. July 11, 2017), Plaintiffs have not stated a claim that the District Defendants violated procedural due process under the Fourteenth Amendment.

Because Plaintiffs failed to allege that they suffered a constitutional deprivation, the Court need not reach the question of *Monell* liability against the District. *See Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("[i]t is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation."). However, even considered on the merits, Plaintiffs' *Monell* claim also fails. Where a plaintiff brings constitutional claims against a municipal actor in her official capacity, the plaintiff must satisfy the requirements of *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). That is, the plaintiff must "plead the existence of a municipal custom, policy, or practice which caused the deprivation of her constitutional rights." *Martinetti v. Mangan*, No. 17-CV-5484 (KMK), 2019 WL 1255955, at *8 (S.D.N.Y. Mar. 19, 2019) (citation omitted). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). For prior acts to constitute a de facto policy of a municipality, those acts must have been "so widespread and so persistent…[to] ha[ve] the force of law." *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020)

Plaintiffs allege the existence of a "discriminatory policy against issues of sexuality and gender" and that the District failed to respond to "instances of gender discrimination" that occurred

14

"both before and after the discrimination" against A.M. (Compl. ¶¶ 41, 78-79). Beyond a vague reference to "an incident the prior year where a physical education and health teacher would not include gender issues in his health class curriculum" because the teacher thought it was a "ridiculous" subject (Compl. ¶ 41), Plaintiffs provide no further detail on what this purported policy entailed. A single incident will not suffice to prove the existence of widespread and persistent municipal policy for purposes of *Monell*. *See Giaccio v. City of New York*, 308 Fed. Appx. 470, 471-72 (2d Cir. 2009) (dismissing the plaintiff's claim arising under Section 1983 where the plaintiff "identifie[d], at most, only four examples where the defendants might have" violated the plaintiff's constitutional rights); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 316 (E.D.N.Y. 2016) (holding that two (2) instances of allegedly unconstitutional actions were insufficient to "support the inference that the County had a policy of" permitting or condoning such behavior); *Bowles v. New York City Transit Auth.*, No. 00 Civ. 4213, 2006 WL 1418602, at *16 (S.D.N.Y. May 23, 2006) (holding that the combined evidence of only two (2) isolated incidents was insufficient to demonstrate a policy or custom for purposes of Section 1983).

Plaintiffs additionally allege in their opposition papers that the District had a "de facto policy" of failing to enforce internal guidelines and codes of conduct. (Opp. at 25.) But a *Monell* claim brought against a municipal entity must be premised on the theory that the municipal actor's allegedly unconstitutional "acts were performed *pursuant* to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (emphasis added). "[P]laintiff[s'] allegations are precisely the opposite of a *Monell* claim. [They] assert[] [District] [D]efendants acted in *contravention* of the school's rules, regulations, policies, and procedures. This is the antithesis of a *Monell* claim, and [P]laintiff[s'] Section 1983 claims against the [] District must

therefore be dismissed." *T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.,* No. 11 CV 5133 VB, 2012 WL 860367, at *4 (S.D.N.Y. Feb. 27, 2012) (emphasis added).

Since A.M. suffered no deprivation of her property interest in education, Plaintiffs' Third Cause of Action against the District Defendants is dismissed without prejudice.[3]

First Amendment Claim

Plaintiffs' Fourth Cause of Action alleges a Section 1983 violation by the District, Sobel, and Leonardatos of Mr. Manara's First Amendment rights to free speech and assembly because the District banned him from the CHSN campus and football games "without due process of law." (Compl. ¶ 96.)

Regarding Mr. Manara's ban from the CHSN campus, the Court "cannot conclude that a parent has a general and unlimited First Amendment right of access to school property." *See Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017). School officials have "the authority…and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property" and that they do not engage in disruptive or "threatening conduct that disturbs the tranquility of schools." *Id.* at 173 (quoting *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999)). The District banned Mr. Manara from campus on the basis of assistant football coach Lynch's advisement that Mr. Manara had threatened student J.S. (Compl. ¶¶ 37-38.) This is precisely the kind of "threatening conduct", *Johnson*, 859 F.3d at 173, that school officials have the right to prevent.

Mr. Manara's ban from football games requires a more complex analysis. Where a public-school invites parents and other spectators to attend sporting events, the sporting event serves as

---

[3] The District Defendants argue in the alternative for dismissing the Third Cause of Action against Trongone alone due to his lack of personal involvement in the alleged deprivation. (*See* Def's Mot. at 13). As the Third Cause of Action is dismissed against all District Defendants, the Court does not reach this issue.

"a limited public forum" and the school may restrict access to a limited public forum only when (1) "its restrictions are reasonable and viewpoint-neutral," or (2) "there is a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety." *Frierson v. Reinisch*, 806 F. App'x 54, 58 (2d Cir. 2020).

Plaintiffs have not set out a basis for why the District's ban was not reasonable or viewpoint-neutral. Apart from a one sentence directive that "given the facts presented" that Mr. Manara's ban from football games was not reasonable or viewpoint-neutral (Opp. at 33), Plaintiffs offer no argument as to what protected speech Mr. Manara was engaging in that the District Defendants limited. To be sure, the parties dispute whether Mr. Manara threatened J.S. and "[s]uch a factual dispute as to why [P]laintiff was in fact barred from District[] [football games] cannot be resolved on a motion to dismiss." *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14CV6668JFBARL, 2016 WL 767986, at *10 n. 6 (E.D.N.Y. Feb. 26, 2016). But though "'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' "is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills,* 572 F.3d 66, 71–72 (2d Cir. 2009) (citation omitted) (alteration in original).

Absent a genuine dispute as to whether the restriction on Mr. Manara's access to CHSN football games was viewpoint-based, Sobel and Leonardatos are entitled to qualified immunity because the factual allegations, even construed in Mr. Manara's favor, establishes that a reasonable official could have believed that (1) Mr. Manara had threatened J.S. based on the fact – *pled* by Plaintiffs – that Coach Lynch said so and (2) Mr. Manara's threat was credible based on the on-going proceedings between A.M. and J.S. *See Hansen v. Watkins Glen Cent. Sch. Dist.*, 832 F. App'x 709, 712–13 (2d Cir. 2020). Indeed, regardless of what happened when Mr. Manara

appeared at football practice, Plaintiffs concede that following Mr. Manara's appearance, two Clarkstown Police Department patrol cars arrived at Plaintiffs' home to warn Mr. Manara to not return to the campus. (Compl. ¶ 37.) Based on this, a reasonable school official in Sobel and Leonardatos' shoes "could have concluded that a parent can lawfully be restricted from school[-sponsored] activities based on a risk of disruption or safety concerns as long as those concerns are not a pretext for viewpoint discrimination, and that a requirement that a parent receive prior permission to enter school property is a minor and reasonable response to such concerns." *Id.* at 713. Accordingly, Plaintiffs' Fourth Cause of Action is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the District Defendants' motion to partially dismiss the Complaint is GRANTED. Plaintiffs' First and Second Causes of Action against Sobel, Leonardatos, Watt, and Trongone, and Fifth and Ninth Causes of Action against Clarkstown Central School District, Sobel, Leonardatos, Watt, and Trongone are dismissed with prejudice. Plaintiffs' Third and Fourth Causes of Action against Clarkstown Central School District, Sobel, Leonardatos, Watt, and Trongone are dismissed without prejudice. Finally, Plaintiffs' claim for punitive damages against Clarkstown Central School District is dismissed with prejudice.

Plaintiffs are granted leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice. If Plaintiffs choose to do so, Plaintiffs will have until December 1, 2023 to file an Amended Complaint. The District Defendants are then directed to answer or otherwise respond by December 23, 2023.

If Plaintiffs fail to file an Amended Complaint within the time allowed, and they cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice. If no Amended Complaint is timely filed, the parties are

directed to complete and file a Case Management Plan and Scheduling Order by December 15, 2023. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 23.

Dated:   November 3, 2023                                       SO ORDERED:
           White Plains, New York

                                                          NELSON S. ROMÁN
                                                      United States District Judge